In re Robert A. JEZIORSKI, Debtor.

John H. Ring, III, as Trustee in Bankruptcy for Robert A. Jeziorski, Plaintiff

v.

Robert A. Jeziorski, Colello & Company, LLC, Defendants.

Bankruptcy No. 06–02633 CLB. Adversary No. 08–01072 CLB.

United States Bankruptcy Court, W.D. New York.

March 25, 2010.

Lawrence C. Brown, Esq., Buffalo, NY, for Plaintiff–Trustee.

Allithea E. Killeen, Esq., Boston, NY, for Colello & Company, LLC.

## DECISION & ORDER

BUCKI, Chief Judge.

In this Adversary Proceeding, the Chapter 7 trustee seeks to avoid a mortgage that secures an allegedly usurious obligation. The central issue of this dispute involves whether the usury law of New York applies to avoid not only an outstanding note, but also the underlying obligation that served as consideration for that note.

Robert A. Jeziorski was the principal owner of corporations that operated three restaurants in the metropolitan area of Buffalo, New York. For almost twenty years, Jeziorski and his corporations retained Eugene C. Colello, CPA, and Colello & Company, LLC, to provide accounting services. In a joint agreement of engagement, Jeziorski and each corporation agreed to assume joint and several liability for all accounting services provided to any of them. Further, the agreement stated that Colello & Company could assess a late fee of one and one-half percent per month on any balances still outstanding after thirty days of billing.

As of August 9, 2001, Jeziorski and his corporations had accrued unpaid obligations to Colello & Company in the total amount of $50,961.13. Consequently, on that date, Jeziorski signed a promissory note on behalf of two of his corporations for the amount due to the accounting firm. This initial note was a demand instrument and specified an interest rate of one percent per month. Soon after its execution, however, the parties replaced the initial note with the first in a series of five replacement notes.

The first replacement note was dated September 10, 2001, and again reflects a liability to Colello & Company for the sum of $50,961.13. In contrast to the initial note, the first replacement note is signed by Robert Jeziorski both in an individual capacity and on behalf of two corporations. Most significantly, the new note states a revised interest rate of 1.5% per month, compounded monthly. Thus, interest accrued at an annual rate in excess of 18%.

On the same day that he signed the first replacement note, Jeziorski also gave to Colello & Company a mortgage on Jeziorski's home at 43 George Drive in the Town of West Seneca, New York. The mortgage makes no reference to any note instrument, but instead contains the following description of the obligation that it secures:

> "The purpose of this Mortgage is to give Mortgagee a continuing security for the payment when due of all debt which Mortgagee holds against Mortgagor. This mortgage shall secure debt that is direct or contingent. It shall secure debt that is now due or may be due in the future. It shall secure renewals and extensions of the debt. The total amount of debt that is secured shall not exceed at any one time Fifty Thousand Nine Hundred Sixty–One and 13/100 Dollars ($50,961.13). Payments made or incurred by Mortgagee to cure Mortgagor's defaults shall be secured by this Mortgage, even if the debt plus payments made or incurred exceed the total amount of debt."

From time to time until April of 2006, Jeziorski and his corporations executed additional replacement notes for the benefit of Colello & Company. Like the note dated September 10, 2001, each of these subsequent notes specify interest at a monthly rate of 1.5%, compounded month-

ly. Essentially, the replacement notes memorialized a capitalization of accruing interest. To this effect. Jeziorski and his corporations signed a second replacement note dated November 29, 2001, for the principal sum of $52,933.36; a third replacement note dated January 8, 2003, for the principal sum of $64,595.65; a fourth replacement note dated February 12, 2004, for the principal sum of $78,544.84; a fifth replacement note dated April 12, 2005, for the principal sum of $96,748.06; and a final replacement note dated April 1, 2006, for the principal sum of $115,032.10.

Robert Jeziorski filed a petition for relief under Chapter 7 of the Bankruptcy Code on September 6, 2006. In schedules submitted with his petition, the debtor acknowledged ownership of a homestead that was subject to three mortgages, including the third lien of Colello & Company. In due course, after hearings on notice to the debtor and the trustee, this court granted the motions of the first and second mortgagees for relief from the automatic stay. Foreclosure ensued. The resulting sale satisfied both the first and second mortgages and further generated a surplus of $86,264.26. As required by the judgment of foreclosure and sale, the referee then deposited this surplus with the Erie County Commissioner of Finance. Prior to any distribution of surplus funds, however, the Chapter 7 trustee commenced this adversary proceeding for declaratory relief to determine the interests and rights of Colello & Company, LLC.

In his amended complaint, the trustee contends that the promissory note of September 10, 2001, is void under the usury law of New York. Accordingly, the trustee seeks judgment declaring that the Colello and Company mortgage is unenforceable as against property of the debtor. Further, pursuant to 11 U.S.C. § 551, the trustee asks that the Colello and Company mortgage be preserved for the benefit of the bankruptcy estate, so that surplus funds otherwise payable to Colello and Company from the foreclosure can instead be paid to the trustee. In response, Colello and Company denies generally the usurious character of the loan and asserts various affirmative defenses.

### Discussion

■ For transactions in the State of New York, the general usury rate is now pegged at 16% per annum. *See* N.Y. GEN. OBLIG. LAW § 5–501 and N.Y. BANKING LAW § 14–a. Pursuant to General Obligations Law § 5–511, an instrument charging interest in excess of this usury rate is void. Exceptions abound, however. For example, section 5–521 of the General Obligations Law prohibits corporations from interposing the defense of usury. Unless designed as a disguised loan, terms for the sale of services are not subject to usury limitations. 72 NEW YORK JUR.2D *Interest and Usury* § 66 (2003). In the present instance, the trustee asserts that the note of September 10, 2001, violates the usury cap by charging interest at an effective annual rate in excess of 18%. Meanwhile, Colello & Company argues that its transactions qualify for one or more of the allowed exceptions to usury.

■ We need not now consider the usurious character of the promissory note dated September 10, 2001, or of the promissory notes executed subsequent to that date. Rather, it suffices to acknowledge that under New York law, any usurious character of these notes will not invalidate an underlying debt for moneys due pursuant to an antecedent agreement. Indeed, controlling precedents have applied this principal to liabilities arising from the delivery of professional services. In *Eikenberry v. Adirondack Co.*, 65 N.Y.2d 125, 490 N.Y.S.2d 484, 480 N.E.2d 70 (1985), the New York Court of Appeals upheld the

liability for legal fees that had provided consideration for a usurious note. As support for this holding, the Court quoted the following text of the decision in *Lesley v. Johnson*, 41 Barb. 359, 362 (Sup.Ct.1864):

When a contract for money, legal and innocent in itself, is once made and consummated, it cannot be made usurious and illegal by any subsequent transactions of the parties. These subsequent transactions may of themselves be illegal, and forbidden by law, but they cannot impart the taint and the consequences of usury to an antecedent agreement, fair, and just, and upright in itself. If the obligation under it is to pay a debt, the obligation, with the legal rights resulting from it, remain in all their force, and cannot be discharged by ingrafting upon it some subsequent agreement obnoxious to the charge of usury.

In the present instance, accounting services provided consideration for the principal balance due under the note dated September 10, 2001. Even if that note and all subsequent replacement notes were usurious, Robert Jeziorski would remain jointly liable for the accounting services rendered to himself or to his corporations, in the total amount of $50,961.13.

By its terms, the disputed mortgage was given to secure only a sum certain of $50,961.13, and not any balance that might become due under the note of September 10, 2001. Even though both the note and mortgage were executed on the same day, the mortgage makes no reference to the note or to the creation of a lien to secure accruing interest. Rather, it recites in paragraph 2 that "[t]he total amount of debt that is secured shall not exceed at any one time Fifty Thousand Nine Hun-

dred Sixty–One and 13/100 Dollars ($50,-961.13)." Although not identified in the mortgage, this sum represents the still unpaid balance due for accounting services. Thus, the mortgage secures only the principal obligation that would remain outstanding even if the note of September 10, 2001, were avoided on grounds of usury.[1]

Pursuant to its mortgage, Colello & Company, LLC, may seek a distribution of $50,961.13 from surplus monies resulting from the foreclosure of the debtor's property. That sum represents not only the limits of its lien, but conveniently also the amount of obligation that would survive even a successful defense of usury.

If Jeziorski had given a mortgage expressly to secure the note of September 10, 2001, then perhaps the usurious character of that note might have compelled an avoidance of the lien. Rather, the mortgage here secures only the amount of a non-usurious principal obligation, without any accrual of interest. Because the underlying debt remains valid, the trustee cannot avoid the mortgage that secures that debt. Accordingly, with respect to the causes of action to avoid the mortgage and to preserve its lien for the benefit of the estate, judgment is granted to the defendant.

■ The complaint also seeks judgment declaring that the promissory note of September 10, 2001, and all subsequent notes are void under the usury law of New York. For the reasons stated herein, any such declaratory relief would not impair the mortgage given to Colello & Company, LLC. Rather, at most, such a declaration would merely determine the additional unsecured liability for interest due on the

---

**1.** As stated in its description of debt, the mortgage also secures payments made to cure defaults, such as for insurance or real estate taxes. However, Colello & Company has asserted no claim for reimbursement of any such advances.

**22**

notes. At this time, however, the trustee has yet to file an asset notice. Hence, a determination of the defendant's unsecured claim is now premature, and would more appropriately be resolved through the process of a claim objection. Accordingly, this request for declaratory judgment is also denied, but without prejudice to the assertion of an objection to any claim that the defendant may hereafter file for unsecured liability.

So ordered.